UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 17-cv-23975-FAM

ILIYANA STEFANOVA,

      Plaintiff,
vs.

GLOBAL ITALIAN FOOD, LLC, *et al.*,

      Defendants.             /

### DEFENDANTS' STATEMENT OF MATERIAL FACTS

The Defendants, Global Italian Food, LLC ("Global Italian Food"), Fratelli Management, LLC ("Fratelli Management"), and Piola Americana, LLC ("Piola Americana"), pursuant to Rule 56(c), Federal Rules of Civil Procedure, and Rule 56.1, Local Rules of this Court, state the material facts as to which they contend there does not exist any genuine issue to be tried, as follows:

1.    The Plaintiff graduated from high school in Bulgaria and came here as an exchange student in 2002 (SD 5).[1] Prior to 2003, she was employed by Hilton as a housekeeper at $8.00 per hour (SD 39). The Plaintiff came to Miami in 2003 and was employed by the downtown Panfiore sandwich shop as a cashier at $10.00 per hour (SD 37-40). In 2005, the Plaintiff was employed by the Panfiore on Miami Beach as a cashier, but eventually she became the assistant manager (SD 37).

2.    The Plaintiff believed that Panfiore was a franchise operation and testified: "Several stores. Mr. Carniato owned the brand. They would pay him royalties for using the name. A similar structure as Piola" (SD 51).

3.    In 2006, the Plaintiff was employed by Italian Food Culture, Inc. as an assistant to

---

[1] "SD" refers to the deposition of the Plaintiff taken March 26, 2018; "GD" refers to the deposition of Marco Galvan taken March 21, 2018; "CD" refers to the deposition of Stefano Carniato taken March 26, 2018; "AF" refers to affidavits; and "Ex." refers to exhibits.

1

*Iliyana Stefanova v. Global Italian Food, LLC, et al.*
CASE NO: 17-cv-23975-FAM

Stefano Carniato at $12.00 per hour (SD 11-12, 14; Ex. 1). At the most, Italian Food Culture, Inc. hired four people (SD. 14). The Plaintiff believed "it was the franchise before Global Italian Food was created. So basically it's sort of what Global Italian Food is today back in that time" (SD 12).

    4.    Concerning franchise structures and the Piola franchises, she testified:

> Q. And what is your understanding of what a franchise structure is?
> A. Well -- okay. There would be a trademark that can be -- I don't know how to explain that.
> Q. Used?
> A. Yeah, for somebody to use in exchange change of a certain amount of royalty paid in exchange.
> Q. Who gives the right to use the trademark? The franchisor or the franchisee?
> A. The franchisor.
> Q. And who pays the royalties?
> A. The franchisee.
> Q. Okay. And in the case of the Piola restaurants is Piola the actual trademark?
> A. Yes.
> Q. And who is the franchisor of the Piola trademark?
> A. Global Italian Food in the United States (SD 51-52).

    5.    Global Italian Food took over most functions for Italian Food Culture, Inc., and Global Italian Food became the Plaintiff's employer by 2010 (SD 18). The Plaintiff testified that Global Italian Food was the Piola franchisor, and "all Piola stores" were its franchisees (SD 67-68).

    6.    The Plaintiff did not know for a fact, but she believes that Piola Americana owns some interest in four Piola franchisees, P24, LLC, P40, LLC, P16, LLC, and P9, Inc. (SD 71-72, 164). She confirmed that each of those entities had a franchising agreement with Global Italian Food (SD 165). The Plaintiff stated that the other Piola franchisees in Houston, Raleigh, Arlington, Washington, Fort Lauderdale, Doral, and Pinecrest were also LLC's or corporations (SD 70-75).

    7.    The Plaintiff relocated to Virginia for Global Italian Food in 2012, as administrative

2

*Iliyana Stefanova v. Global Italian Food, LLC, et al.*
CASE NO: 17-cv-23975-FAM

assistant and marketing manager—"doing most of the company's... Operations" (SD 22-23). Her administrative roles included payroll, accounts payable and receivable, collecting royalty payments, and signing new franchises" (SD 23). Her marketing roles included working with a graphic design studio to create artwork, menus and materials for events, promotions, opening cocktails, and art exhibitions, and implementing those ideas and events with the various restaurants (SD 23-25, 27).

8. At that time there were about eight to ten Piola restaurants according to the Plaintiff, and she had been to all of them except for the Raleigh restaurant (SD 29-30). The Plaintiff went to the Washington restaurant during construction to take measurements and pictures, and to arrange for vendors and products (SD 32-33). Global Italian Food paid the Plaintiff $45,000-$48,000 per annum in 2012-2013 (SD 35-36).

9. Interest in Piola franchises was growing in 2014 to 2016 (SD 78-79). Global Italian Food closed its office in Virginia and the Plaintiff returned to Miami in July 2014 (SD 42). The Plaintiff worked from a warehouse in Wynwood, which included a built-in open office area (SD 46-48). She worked "at least" 40 hours per week for Global Italian Food, and her office hours were 9:00 a.m.-5:30 p.m. workdays—but she would "stay after-hours occasionally" (SD 49-50, 180).[2]

10. The Plaintiff was paid $69,000 per annum in 2014, 2015 and 2016, with two weeks' paid vacation—solely by Global Italian Food (SD 64-65). The Plaintiff testified that she had no written contract of employment with Global Italian Foods, that she had no employee handbook, and that she had no disabilities either (SD 65).

11. The Plaintiff's responsibilities for accounts payable and receivable, and for invoicing franchisees, were transferred to Marco Galvan after her return, but she retained the "responsibility

---

[2] At least ten separate entities occupy the warehouse with defendants, i.e.: Giochi di Pizza; Steda Investment, LLC, Fabrica, LLC, CMH, LLC, Carmelo, LLC, Frintreta, LLC, and Piola Tropicale, LLC (SD 56-61). The only signage in or on the building was for "Giochi di Pizza" (SD 60-62).

*Iliyana Stefanova v. Global Italian Food, LLC, et al.*
CASE NO: 17-cv-23975-FAM

of the marketing manager, any type of legal work as far as like signing franchisees, working with any attorneys for any reason as far as Global" (SD 67). But her duties did not decrease because she got more involved in organizing, running manager meetings and training, maintaining social media, and assisting Stefano Carniato "basically with anything that he needed" (SD 76-78).

12.  The Plaintiff started to "organize the company more, work more on implementing different things like standards, franchisee standards, manuals, things like that" (SD 79). She organized and led manager meetings held at the warehouse every two weeks, and she prepared agendas for franchisor standards, uniforms, restaurant operations, and performance (SD 82-84).

13.  The Plaintiff verified that one of her "job responsibilities was to ensure on behalf of Global Italian Food, LLC that the franchisees complied with the franchisor's standards and quality control and trade dress and trade name" (SD 165). Her email signature stated and represented that she was with "Global Italian Food, LLC"—solely (SD 85, 181; Ex. 3, 23).

14.  By November 2014, the Plaintiff had become an Evaluator for Global Italian Food (SD 133; Ex. 5). As an Evaluator for Global Italian Food, the Plaintiff's duties and responsibilities including physically inspecting the Piola restaurants for compliance with detailed checklists of franchisor's standards, including equipment and machinery, completing worksheets and preparing Evaluators' Findings Reports, presenting her finding and an action plan to Piola managers, and then conducting "follow-up" inspections and meetings (SD 137, 139, 142-144, 151).

15.  The Plaintiff had scheduled 19 evaluations between January 26-July 25, 2015 (SD 83-84; Ex. 3). On average, the Plaintiff would spend two days at each Piola restaurant performing her inspections and evaluations (SD 95). Her evaluations for Global Italian Food included:

- Piola Weston on November 19, 2014 (SD 132-133; Ex. 5)
- Piola Hallandale on January 27, 2015 (SD 140-142; Ex. 8)
- Piola Houston, Texas on April 15-17, 2015 (SD 145-148; Ex. 9)
- Piola Weston (follow-up) on April 24, 2015 (SD 128, 134; Ex. 4)

4

*Iliyana Stefanova v. Global Italian Food, LLC, et al.*
CASE NO: 17-cv-23975-FAM

- Piola Fort Lauderdale on April 29, 2015 (SD 134-137; Ex. 6)
- Piola Houston, Texas (follow-up) July 9-10, 2015 (SD 148, 152; Ex. 9)
- Piola Brickell on September 24-30, 2015 (SD 138; Ex. 7)

16. In addition inspecting and evaluating Piola restaurants, the Plaintiff also trained at least three evaluators, both at the warehouse office and on-site at restaurants (SD 95-96).

17. The Plaintiff also assisted Stefano Carniato to train new restaurant managers (SD 91-94). She testified: "Usually the training was like maybe three, four weeks. So first week I meet with them for orientation. The next two, three weeks I meet with them just to follow up, see how everything goes" (SD 93). The Plaintiff testified that the orientation and follow-up meetings would be held in "[m]ost cases at the restaurant," but also at the Wynwood warehouse office (SD 93, 94).

18. The Plaintiff was solely on Global Italian Food's payroll in 2014, 2015 and 2016 (SD 54). The Plaintiff received W-2s solely from Global Italian Food or, previously, from Italian Food Culture, Inc. (SD 19-20). The Plaintiff has never received a W-2 or 1099 from either Fratelli Management or from Piola Americana (SD 21).

19. The Plaintiff had credit card, bank account, and wire transfer authority solely for Global Italian Food (or Italian Food Culture, Inc.), but she never had any such authority for either Fratelli Management or Piola Americana (SD 217-218).

20. The Plaintiff does not know who owns Global Italian Food, or who it employs (SD 160). The Plaintiff was "not sure" who Global Italian Food employed in 2014, but she was "sure it was me and Mr. Nabil Ashi" (SD 161). Other than herself, she could not remember who Global Italian Food employed in 2015-2016 (SD 161).

21. The Plaintiff does not know who owns Piola Americana or who it employed in 2015-2016 (SD 163). The Plaintiff does not know who owns Fratelli Management or who it employs (SD 159). Fratelli Management has no employees and no relationship to Piola (CD 15-16).

*Iliyana Stefanova v. Global Italian Food, LLC, et al.*
CASE NO: 17-cv-23975-FAM

22. No defendant owns any interest in any other defendant (Carniato Aff. ¶ 45).

23. For each working day during each of 20 or more calendar workweeks during 2015: Global Italian Food maintained an employment relationship with a maximum of 10 employees (which declined to 9 during the week ending on November 21, 2015); Piola Americana maintained an employment relationship with 0 employees in 2015; Fratelli Management maintained an employment relationship with 1 employee in 2015 (which declined to 0 during the week ending on September 5, 2015, and throughout the remainder of 2015 (Carniato Aff. ¶¶ 37-44).

24. For each working day during each of 20 or more calendar workweeks during 2016: Global Italian Food maintained an employment relationship with a maximum of 4 employees (which declined to 3 during the week ending September 24, 2016); Piola Americana maintained an employment relationship with a maximum of 7 employees; and Fratelli Management maintained an employment relationship with 0 employees throughout 2016. (Carniato Aff. ¶¶ 37-44)

25. On December 16, 2015, Stefano Carniato asked the Plaintiff to research the "Obama Plan" to "offer the insurance to everybody" (SD. 208; Ex. 28, IS-0075). The Plaintiff replied the next morning: "If you have fewer than 50 full-time equivalent (FTE) employees, you are not required to provide insurance to your employees." Mr. Carniato replied that evening: "I know this limit, but I think if you are a chain you must put all the sister together, check this for me please" (Ex. 28, IS-0074). The Plaintiff testified accordingly, to wit:

> Q. **Did all the sister companies put everyone together and make an application for health insurance?**
> A. I don't remember. **I think yes because the plan had for everybody** but it wasn't me signing up, working with insurance agent. I'm not sure how they did that (SD 209; emphasis added).

26. As Marco Galvan explained, "when you create insurance, if you want affordable rate you need to create a group, because it's the only way. You need to make a number, because

*Iliyana Stefanova v. Global Italian Food, LLC, et al.*
CASE NO: 17-cv-23975-FAM

if you give to the insurance company the numbers of - what you say - of insurance, they're going to give you a good, they're going to give you a good rate" (GD 91). As Mr. Galvan testified, "

> Q. Okay. And what companies did Piola Americana, LLC, offer this insurance to?
> A. **I don't know if it's Piola Americana offers the insurance, but each restaurant offer, each company offer the insurance to the employee** --
> Q. Okay.
> A. -- because it's the way it is. **Because each company, the employee is not applying to Piola Americana for the insurance. The employees are applying to P16, P16, P24, P40, P73, P25, Piola Americana, Global Italian Food. Each employee is applying**.
> Q. So all of those companies --
> A. All these applying for each company.
> Q. **All of those companies are grouped together for purposes of group health insurance, that's what you're saying?**
> A. For, for --
> Q. All of those entities that you just named, the employees who work for each of those entities --
> A. **Well, for health reason, yes** (GD 92; emphasis added).

27. On March 1, 2016, IOA "Prepared Exclusively For: Piola Americana" an employee benefits plan for medical, dental and vision coverage, that was given to the Plaintiff while she was still employed and being paid in full by Global Italian Food (SD 205; Ex. 28, IS-0010-IS-0011).

28. Mr. Galvan testified that Blue Cross provided health and medical coverage, whereas Humana provided dental and vision coverage (GD 91-92). As Mr. Galvan further explained:

> With Humana we have a bill for each store. Each company Humana make, can make a bill. With Florida Blue is not possible to do that, so we need to, we need to make a big -- they just, they put everybody – even if it's divided, each employee is divided by, it is written each employee to which company the employee belong, then from each company, you know, you put in the books and from each company you make a check, you put all the check together and you send the payment (GD 91).

29. At about 1:00 p.m. on Wednesday, February 17, 2016, while the Plaintiff was at PetSmart, a "lady with a crazy dog just came running and they tripped me [the Plaintiff] from behind with a leash, dislocated my knee, and I feel back on the floor on my back" (SD 110, 152). The Plaintiff was taken to the Jackson Memorial Hospital, and was released with the instructions:

*Iliyana Stefanova v. Global Italian Food, LLC, et al.*
CASE NO: 17-cv-23975-FAM

"**Should not drive or travel by air for <u>one week</u>**" (SD. 211; Ex. 28, IS-0013; emphasis added).

30. On February 26, 2016, the Plaintiff emailed Stefano Carniato: "I would love to come to this meeting, but I am still stuck here. And will be so next week for sure. Also next week I will know if I will require surgery, because when my kneecap dislocated caused other internal damage (SD 185-186; Ex. 15). By March 11, 2016, the Plaintiff still did not know (SD 187-88).

31. In her Complaint the Plaintiff alleges: "From in and about February 17, 2016 until September 2016, STEFANOVA worked remotely from home due to her injuries. However, at times when necessary during that period, STEFANOVA physically presented herself at the office and/or at other locations to conduct meetings" (¶ 15; SD 120-121).

32. The Plaintiff, however, could not remember the number of meetings she attended, nor any dates or even months that they were held, nor who attended them (SD 126, 127, 176). The Plaintiff claimed that she started work at home for Global Italian Food between 8:00 and 9:00 a.m. (SD 176), but she kept no record of her time:

```
Q.   Did you keep a time sheet?
A.   No, I didn't keep a time sheet.
Q.   Did you keep any kind of time log?
A.   No, I didn't. (SD 177).
```

33. After her PetSmart fall, Global Italian Food continued to pay the Plaintiff her full salary of $5,800 per month through July 31, 2016 (SD 171-172, 175). Thus, Global Italian Food paid the Plaintiff her full salary for 165 days, or 23¾ weeks, or 5½ months after she fell at PetSmart.

34. The Plaintiff verified that Global Italian Food was supposed to reduce her salary on June 1, 2016 (SD 171-172). However, because she was applying for a mortgage, and she was worried her mortgage would get denied if her salary was reduced, Global Italian Food agreed to her request to pay her salary in full until July 31, 2016 (SD 189-190). As a result, the Plaintiff got her mortgage and moved to Cooper City in August 2016 (SD 112, 171-172, 189-190).

*Iliyana Stefanova v. Global Italian Food, LLC, et al.*
CASE NO: 17-cv-23975-FAM

35. Mr. Carniato asked the Plaintiff numerous times for a doctor's note (CD 68, 70). On June 27, 2016, the Plaintiff emailed Stefano Carniato: "Next I am not sure if that's what you ask – my health?? I am working on it, it's complicated. **Anyhow I am planning to come back to work at the office no later than 8/1, hopefully I can, hopefully before**" (SD 216; Ex. 30).

36. Although the Plaintiff told Stefano Carniato that she could not come back to work until August 1, 2016, she was able to celebrate the Fourth of July at a hotel in Fort Lauderdale on July 4, 2016—and authenticated a picture of her celebrating it with friends (SD 211-213; Ex. 29).

37. After July 31, 2016, Global Italian Food began paying the Plaintiff a reduced salary (SD 172-174). As of her paystub for the period ending August 31, 2016, Global Italian Food had paid the Plaintiff a gross salary totaling $41,710 in 2016 (SD 173-174; Ex. 12).

38. On August 17, 2016, Stefano Carniato emailed the Plaintiff: "In other side I aspect you remind me to answer but is not happen and for me this is a problem, for me is difficult to work and remember everything. Let me know how to proceed the work" (SD 192-93; Ex. 22). The Plaintiff, who testified "I guess you can say it looks like problems are developing," replied: "BTW I am available for calls and meeting almost any time. As always, I understand the inconvenience to not be in the office (not just for you btw), but unfortunately as I said many times before I had an accident and I am very sick, sorry about that, I assure you was not intentional" (SD 193; Ex. 22).

39. On August 23, 2016, counsel for Global Italian Food wrote the Plaintiff:

> The tasks of which you are unable to perform at the office are an essential component to the position as Administrative Assistant, and therefore, at this time, due to this complicated predicament, our client has been left with no other remedy but to terminate your employment. Our client adamantly wishes for your improved well-being and, will be glad to welcome you back as an employee, availability permitted, once you are able to perform the fundamental tasks required as an Administrative Assistant at the office (SD 195; Ex. 24).

40. On September 7, 2016, the Plaintiff replied to counsel for Global Italian Food:

> I actually had best intentions to do my job and try to provide you with a letter of

*Iliyana Stefanova v. Global Italian Food, LLC, et al.*
CASE NO: 17-cv-23975-FAM

clearance, but I would need to know the exact specific activities required for my position I need to be cleared for or if you have any form available that you require my doctor to fill in. And this will require an actual doctors visit for evaluation that cannot be done today, which is the last day of the 5 I was given, so let me know if I should consider my employment terminated or my employers is willing to accommodate my current situation until I recover (SD 195-196; Ex. 25).

41. Counsel for Global Italian Food replied to the Plaintiff on September 8, 2016, giving her until September 13, 2016 to "produce a letter of clearance from your doctor" that she could "work in the office Monday to Friday from 9 am to 5 pm," and "be available on weekends in case it is necessary to go out of town" (Ex. 25).

42. On September 13, 2016, the Plaintiff went to "Spine Solutions" "looking for this medical clearance" that Global Italian Food had requested (SD 198-199). The Plaintiff was examined by "Raina Hachet, P.A.-C"—and solely by Raina Hachet—who wrote on a prescription form: "**No work over 4-5 hrs**. Please allow 15-30 min rest breaks every 2 hrs. for neck + knee pain until September 23, 2016 at next appointment w/us thank you" (SD 198-201; Ex. 26). The Plaintiff never provided Global Italian Food with anything other than the PA-C's note (SD 202).

43. Global Italian Food sent the Plaintiff a letter on September 20, 2016 stating that "the doctor's note you provided is not sufficient because it… does not specifically give you clearance from your doctor to work full time in the office," terminating her employment on September 15, and ending: "Once your physician gives you the necessary clearance letter, you are welcome to re-apply for your position as Administrative Assistance, or for an equivalent position" (SD 201-202; Ex. 27).

44. The Plaintiff is suing PetSmart and the lady whose dog tripped her up, for which she has received a $500 proposal for settlement (SD 155-158; Ex. 10). The Plaintiff's counsel referred her to a surgeon for outpatient arthroscopic surgery on January 23, 2017, which resulted in a scar of less than one inch and two smaller holes on the Plaintiff's right knee (SD 63-64, 76, 182-183).

10

*Iliyana Stefanova v. Global Italian Food, LLC, et al.*
CASE NO: 17-cv-23975-FAM

                                                s/John H. Patterson Jr.
                                                John H. Patterson Jr.
                                                Florida Bar No. 0516597
                                                pat@pattersonsweeny.com
                                                Patterson & Sweeny, PL
                                                Counsel for Defendants
                                                2601 S. Bayshore Drive, Ste. 1100
                                                Miami, Florida 33133
                                                305.350.9000 Telephone
                                                305.372.3940 Facsimile

### Certificate of Service

     I hereby certify that a true and correct copy of the foregoing, Defendants' Statement of Material Facts, was served by electronic filing using CM/ECF on April 9, 2018 on all counsel or parties of record on the Service List below.

                                                s/John H. Patterson Jr.
                                                John H. Patterson Jr.

### SERVICE LIST
*Iliyana Stefanova v. Global Italian Food, LLC, et al.*
**CASE NO: 17-cv-23975-FAM**
**United States District Court – Southern District of Florida**

Jacob K. Auerbach, Esq.
jauerbach@gallup-law.com
Gallup Auerbach
4000 Hollywood Boulevard
Suite 265 South
Hollywood, Florida 33021
Telephone 954.894-3035
Attorney for Plaintiff
Served via Notice of Electronic Filing