UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 17-cv-23975-FAM

ILIYANA STEFANOVA,

    Plaintiff,
vs.

GLOBAL ITALIAN FOOD, LLC,
FRATELLI MANAGEMENT, LLC,
and PIOLA AMERICANA, LLC,

    Defendants.          /

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The Defendants, Global Italian Food, LLC ("Global Italian Food"), Fratelli Management, LLC ("Fratelli Management"), and Piola Americana, LLC ("Piola Americana"), move for summary judgment on all claims stated by the Plaintiff, ILIYANA STEFANOVA, and the Defendants' Defenses, pursuant to Rule 56(a), Federal Rules of Civil Procedure, and Rule 56.1, Local Rules of this Court, because the materials of record show that there is no genuine dispute as to any material fact and that the Defendants are entitled to summary judgment as a matter of law, and as specific points and authorities therefor, state:

### I. INTRODUCTION

The Defendants are entitled to summary judgment on the Plaintiff's Complaint because: (1) The Defendants—*combined*—maintained an employment relationship with a maximum of only 10 employees in 2015, and only 11 employees in 2016; (2) the Plaintiff cannot establish a prima facie ADA or FCRA case because her requested "accommodation of working from home" or "working 4-5 hours at the office" were unreasonable, and, therefore, she was not a "qualified individual"; (3) *even if* FMLA jurisdiction existed, Global Italian Food alone would have been responsible; and

1

*Iliyana Stefanova v. Global Italian Food, LLC*, *et al*.
CASE NO: 17-cv-23975-FAM

(4) Global Italian Food has established its prima facie defenses, including undue hardship.

## II.  MATERIAL FACTS

The Defendants adopt their Defendants' Statement of Material Facts [ECF No. 25], and, unless otherwise stated, the symbols used therein as follows:  "SD" refers to the deposition of the Plaintiff taken March 26, 2018; "GD" refers to the deposition of Marco Galvan taken March 21, 2018; "CD" refers to the deposition of Stefano Carniato taken March 26, 2018; "Aff." refers to affidavits of Stefano Carniato and Marco Galvan; and "Ex." refers to corresponding exhibits.

## III. SUMMARY JUDGMENT STANDARD

In ADA/FCRA/FMLA cases

> Summary judgment is appropriate if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). An issue is "material" if it is a legal element of the claim under applicable substantive law which might affect the outcome of the case. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986); *Allen v. Tyson Foods,* 121 F.3d 642, 646 (11th Cir. 1997). An issue is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Allen,* 121 F.3d at 646.  On a motion for summary judgment, the Court must view all the evidence and all factual inferences drawn therefrom in the light most favorable to the non-moving party, and determine whether that evidence could reasonably sustain a jury verdict. *Celotex,* 477 U.S. at 322-23; *Allen,* at 646. While the burden on the movant is great, the opposing party has a duty to present affirmative evidence in order to defeat a properly supported motion for summary judgment. *Anderson,* 477 U.S. at 252. A mere "scintilla" of evidence in favor of the non-moving party, or evidence that is merely colorable or not significantly probative is not enough. *Id.; see also Mayfield v. Patterson Pump Co.,* 101 F.3d 1371, 1376 (11th Cir. 1996) (conclusory allegations and conjecture cannot be the basis for denying summary judgment).

*Cruz-Lovo v. Ryder Sys.*, 298 F. Supp. 2d 1248, 1250-51 (S.D. Fla. 2003)

## IV.  POINTS AND AUTHORITIES

### A.  *The Court Lacks Subject-Matter Jurisdiction Over FMLA, ADA or FCRA*

The Plaintiff's Complaint alleges:  "Defendants were STEFANOVA's joint or integrated

2

*Iliyana Stefanova v. Global Italian Food, LLC, et al.*
CASE NO: 17-cv-23975-FAM

employers pursuant to Section 2611 (4) of the FMLA when STEFANOVA notified Defendants that she suffered from a serious medical condition, which qualified here for leave time and benefits under the FLMA" (¶ 28).

1. FMLA

For the FMLA "statute to apply, the employer(s) at issue must have at least 50 employees within a 75 mile radius of the worksite. *See* 29 U.S.C. § 2611(2)(B)(ii)." *Morrison v. Magic Carpet Aviation*, 383 F.3d 1253, 1254 (11th Cir. 2004).

The record establishes that Global Italian Foods is a company that is and always has been the franchisor of "Piola" franchisees and restaurants, and that it alone was the Plaintiff's sole and exclusive employer from 2009 until her termination in September 2016. The record establishes that Fratelli Management qualified to do business in Florida in January 2013, it became the Manager of Global Italian Food in July 2015, it owns no franchises or restaurants, and it never employed the Plaintiff.[1] (CD 15-16)

The record establishes that Piola Americana is a company that commenced operations in 2016, it has an interest in six "Piola" franchisees—each of which is limited liability company—and it never employed the Plaintiff. No Defendant owns any interest in any other Defendant (Carniato Aff. ¶ 46).[2] The record further establishes that:

1. For each working day during each of 20 or more calendar workweeks during 2015, Global Italian Food maintained an employment relationship with a maximum of ten (10)

---

[1] And the allegation in paragraph 10 of the Plaintiff's Complaint is demonstrably false, to wit: "FRATELLI, however, owns at least three (3) such restaurants organized as limited liability companies of which Mr. Carniate and FRATELLI are the owner/manager in the greater Miami area and employ at least 140 employees, including but not limited to, the employees of GLOBAL."

[2] Even if it were otherwise, "[a]s a matter of law, we [the Eleventh Circuit] do not believe that common ownership of two corporations is enough for a jury to conclude that they were integrated into one operation for FMLA purposes. *Morrison v. Magic Carpet Aviation*, 383 F.3d 1253, 1257 (11th Cir. 2004).

*Iliyana Stefanova v. Global Italian Food, LLC, et al.*
CASE NO: 17-cv-23975-FAM

employees, and that was only starting the week ending November 7, 2015, until the week ending on November 21, 2015, which went down to nine (9) employees only (Carniato Aff. ¶ 38).

2. For each working day during each of 20 or more calendar workweeks during 2016, Global Italian Food maintained an employment relationship with a maximum of four (4) employees (and only three (3) employees during the weeks ending September 24, 2016 and October 1, 2016) (Carniato Aff. ¶ 39).

3. Piola Americana maintained an employment relationship with zero (0) employees for each and every working day throughout 2015 (Carniato Aff. ¶ 40).

4. For each working day during each of 20 or more calendar workweeks during 2016, Piola Americana maintained an employment relationship with a maximum of seven (7) employees, and that was only starting the week ending August 20, 2016 (Carniato Aff. ¶ 41).

5. Fratelli Management has one Manager and maintained an employment relationship with only one (1) employee for each working day during each of 20 or more calendar workweeks during 2015 (until September 5, 2015), with zero (0) employees for each working day during each of 20 or more calendar workweeks from September 5, 2015 through December 31, 2015, and with zero (0) employees for each working day during each of 20 or more calendar workweeks in 2016 (Carniato Aff. ¶ 42).

Therefore, the record establishes that, for each working day during each of 20 or more calendar workweeks for each working day in 2015, the Defendants ***combined*** had a maximum of ten (10) employees, and for each working day during each of 20 or more calendar workweeks for each working day in 2016, the Defendants ***combined*** had a maximum of eleven (11) employees.

Assuming *arguendo* that Global Italian Food is integrated with Fratelli Management and Piola Americana, applying either the "integrated employer" or the "joint employment" theories,

4

their combined number of employees totals eleven (11) at most during any 20-week period in 2015 or in 2016. Accordingly, the Defendants are entitled to judgment on the Plaintiff's FMLA claims as a matter of law. *Exemar v. Urban League of Greater Miami, Inc.*, 585 F. Supp. 2d 1377, 1380 (S.D. Fla. 2008) ("However, even assuming that the Urban League is integrated with the fifteen other entities, Plaintiff has failed to raise a genuine issue of fact regarding whether the combined number of employees is fifty or more, as is required to trigger application of the FMLA.").[3]

Likewise, even assuming that Fratelli Management and Piola Americana are integrated with the Plaintiff's employer, i.e., Global Italian Food, the Defendants combined do not employ the 50 or more employees required to trigger the FMLA. *Id*.

  2.  <u>ADA/FCRA</u>

"Under the ADA, the term 'employer' means 'a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar

---

[3] The Plaintiff relies on an application for an employee benefits plan providing medical, dental and vision coverage—"Prepared Exclusively For: Piola Americana"—the application for which states that it has more than 50 employees. But the testimony of Marco Galvan verifies that this was done to achieve favorable rates and to provide comprehensive benefits to the employees of all of the Piola franchises as well as the Defendants. Moreover, Mr. Galvan verified that each company is billed and pays only for its covered employees under the plans (GD 91-93). This is quite common, and, accordingly, courts have held this type of action is not evidence of single employer status.

> The 50 employee threshold under the FMLA "is an economic one rooted in protecting small businesses, and the purpose of the 'integrated employer' test is to ensure that a defendant has not structured itself to avoid labor laws." *Engelhardt v. S.P. Richards Co., Inc.,* 472 F.3d at 5 (citing *Papa v. Katy Indus., Inc.,* 166 F.3d at 942); *E.E.O.C. v. Con-Way, Inc., supra* ("***It is common for parent companies and their subsidiaries to have common pension and benefits plans in order to achieve certain economic efficiencies, and courts have held this type of action is not evidence of single employer status***." (citations omitted)).

*Cardinale v. S. Homes of Polk Cty., Inc.*, No. 8:06-CV-1295-JDW-MSS, 2008 U.S. Dist. LEXIS 21716, at *30 (M.D. Fla. Mar. 19, 2008)(emphasis added).

*Iliyana Stefanova v. Global Italian Food, LLC*, *et al*.
CASE NO: 17-cv-23975-FAM

weeks in the current or preceding calendar year, and any agent of such person. . . .' 42 U.S.C. § 12111(5)." *Guaqueta v. Universal Bevs., LLC*, No. 09-21576-CIV, 2010 U.S. Dist. LEXIS 69660, at *16-17 (S.D. Fla. July 13, 2010)(quotation marks deleted).

"Under the Florida Civil Rights Act, the term 'employer' means any person employing 15 or more employees. Fla. Stat. § 760.02(7). Because federal case law regarding Title VII is applicable to claims under the Florida Civil Rights Act,… the analysis is the same under both statutes." *Church v. Nationwide Ins. Co.*, No. 00-8007-CIV-HURLEY, 2000 U.S. Dist. LEXIS 22689, at *4 n.2 (S.D. Fla. July 17, 2000); *Rabb v. Sch. Bd. of Orange Cty.*, 590 F. App'x 849, 850 n.2 (11th Cir. 2014).

As noted above, the record establishes that, for each working day during each of 20 or more calendar workweeks for each working day in 2015, the Defendants **combined** had a maximum of ten (10) employees, and for each working day during each of 20 or more calendar workweeks for each working day in 2016, the Defendants **combined** had a maximum of eleven (11) employees.

Consequently, jointly and severally, the Defendants do not qualify as an "employer" under the ADA or the FCRA either, and they are entitled to summary judgment on all counts and claims upon which relief could have been granted pursuant to the ADA and FCRA. 42 U.S.C. § 12111; § 760.02, Fla. Stat.; *Aparicio v. Creative Glass Prods.*, No. 2:14-cv-467-FtM-38DNF, 2015 U.S. Dist. LEXIS 3807, at *5-6 (M.D. Fla. Jan. 12, 2015).

### B. *The Plaintiff Cannot Establish a Prima Facie ADA or FCRA Case*

Assuming *arguendo* that the Plaintiff was actually disabled, or was regarded as such, she cannot establish a prima facie case of discrimination under the ADA or the FCRA, because she was not a "qualified individual" and she was not discriminated against because of her disability. As the

*Iliyana Stefanova v. Global Italian Food, LLC*, *et al*.
CASE NO: 17-cv-23975-FAM

Eleventh Circuit has held:

> The ADA prohibits an employer from discriminating against "a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). **In order to establish a prima facie case of discrimination under the ADA, the plaintiff must show that: (1) he is disabled; (2) he was a "qualified individual" at the relevant time, meaning he could perform the essential functions of the job in question with or without reasonable accommodations; and (3) he was discriminated against because of his disability….**
>
> An employer unlawfully discriminates against a qualified individual with a disability when the employer fails to provide "reasonable accommodations" for the disability—unless doing so would impose undue hardship on the employer. 42 U.S.C. § 12112(b)(5)(A); 29 C.F.R. § 1630.9(a). **An accommodation can qualify as "reasonable," and thus be required by the ADA, only if it enables the employee to perform the essential functions of the job…. The plaintiff bears the burden of identifying an accommodation, and of demonstrating that the accommodation allows him to perform the job's essential functions**….

*Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255-56 (11th Cir. 2001)(emphasis added; cites deleted); *Everett v. Grady Mem'l Hosp. Corp.*, 703 F. App'x 938, 942-46 (11th Cir. 2017).

The Plaintiff's alleges: "Defendants violated the ADA [and FCRA] by discriminating against Plaintiff because of her disability by failing to provide her *a reasonable accommodation of working from home* while other non-disabled employees were permitted to work off-site; by failing to provide her the reasonable accommodations recommended by her doctor; and by terminating her employment because of her disabilities." (Complaint ¶¶ 46, 37; emphasis added).

The evidence establishes without dispute that the essential functions of the Plaintiff's job included traveling within and without Florida (including Texas, Virginia, and Washington, DC), inspecting, evaluating, and following-up with Piola restaurants, training managers and personnel, handling accounts payable and receivable, maintaining office hours in Wynwood from 9:00 a.m. through 5:30 p.m., and working 40 hours per week. The allegation that the essential functions of

7

*Iliyana Stefanova v. Global Italian Food, LLC*, *et al*.
CASE NO: 17-cv-23975-FAM

the Plaintiff's job could be performed working from her home in Cooper City is facially absurd.

The Eleventh Circuit has held, "one who does not come to work cannot perform any of his job function, essential or otherwise." *Willis v. Conopco, Inc.*, 108 F.3d 282, 287 (11th Cir. 1997) (quoting *Jackson v. Veterans Admin.,* 22 F.3d 277, 279 (11th Cir.1994). The Fifth Circuit has held, "there is general consensus among courts, including ours, that regular work-site attendance is an essential function of most jobs…. This is especially true when the position is interactive and involves a significant degree of teamwork." *Credeur v. Louisiana*, 860 F.3d 785, 793 (5th Cir. 2017)(brackets and parentheticals deleted).[4]

> The Sixth Circuit has determined that as a general rule, "[r]egular, in-person attendance is an essential function—and a prerequisite to essential functions—of most jobs, especially the interactive ones." *E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 762-63 (6th Cir. 2015). The Sixth Circuit noted that this was consistent with informal guidance by the Equal Employment Opportunity Commission ("EEOC") that "[a]n employer may refuse a telecommuting request when, among other things, the job requires 'face-to-face interaction and coordination of work with other employees,' 'in-person interaction with outside colleagues, clients, or customers,' and 'immediate access to documents or other information located only in the work place.'" *Id.* (quoting EEOC Fact Sheet, *Work At Home/Telework as a Reasonable Accommodation* (Oct. 27, 2005), http://www.eeoc.gov/facts/telework.html).

*Morris-Huse v. Geico*, No. 8:16-cv-1353-T-36AEP, 2018 U.S. Dist. LEXIS 14284, at *25-26 (M.D. Fla. Jan. 30, 2018).

And this Court has held: "'Except in the unusual case where an employee can effectively perform all work-related duties at home, an employee who does not come to work cannot perform *any* of his job functions, essential or otherwise.' *Tyndall v. Nat'l Educ. Ctrs. Inc.,* 31 F.3d 209, 213 (4th Cir. 1994)." *Cline v. Home Quality Mgmt.*, No. 01-9016-CIV-MOORE, 2004

---

[4] *See also*, *Cline v. Home Quality Mgmt.*, No. 01-9016-CIV-MOORE, 2004 U.S. Dist. LEXIS 5475, at *13 (S.D. Fla. Mar. 18, 2004)("Except in the unusual case where an employee can effectively perform all work-related duties at home, an employee who does not come to work cannot perform *any* of his job functions, essential or otherwise." *Tyndall v. Nat'l Educ. Ctrs. Inc.,* 31 F.3d 209, 213 (4th Cir. 1994))."

*Iliyana Stefanova v. Global Italian Food, LLC*, *et al*.
CASE NO: 17-cv-23975-FAM

U.S. Dist. LEXIS 5475, at *13 (S.D. Fla. Mar. 18, 2004).

In *Everett*, the plaintiff was the "Program Manager of Grady's Car Seat Program, which educates new parents about the importance of car seats and provides them to families who cannot afford them." *Everett*, 703 F. App'x at 940. The Eleventh Circuit affirmed summary judgment for the defendant because the plaintiff "was not a 'qualified individual' because her 'request of full time work from home was not a reasonable accommodation,'" as her essential job duties included "organizing and implementing the Car Seat Program, developing program materials, coordinating safety classes for the program, and preparing all necessary documentation for the program." *Everett*, 703 F. App'x at 944.

In *Abram v. Fulton Cty. Gov't*, 598 F. App'x 672, 677 (11th Cir. 2015)(per curiam), the plaintiff, who suffered from Lupus, "held the position of 'Administrative Coordinator I' in Fulton County's Public Works Department, and she served as a front-desk receptionist." The Eleventh Circuit affirmed the district court's summary judgement for defendant and held:

> The district court correctly concluded that a reasonable jury would have been compelled to find that Abram's physical presence at the front desk was an essential function of her position and that her request to work from home (where she would not have been able to perform this essential function of her position), was for no reasonable accommodation.

In *Morris-Huse v. Geico*, No. 8:16-cv-1353-T-36AEP, 2018 U.S. Dist. LEXIS 14284, at *23-24, 28 (M.D. Fla. Jan. 30, 2018), the plaintiff was a TCR I Supervisor who "would conduct team meetings, typically on a daily basis, which required physical presence," but suffered from Meniere's. The Middle District granted the defendant's motion for summary judgment and held:

> The brunt of her complaint appears to be that she would have preferred an accommodation that she work from home because she concluded that these alternatives did not accommodate the symptoms of her Meniere's Disease. This is not the standard imposed by the ADA. An employee is not entitled to an accommodation of his or her preference, nor is he or she entitled to an accommodation that is not supported by medical documentation.

9

*Iliyana Stefanova v. Global Italian Food, LLC*, et al.
CASE NO: 17-cv-23975-FAM

On that point of departure, the Plaintiff merely produced a "Spine Solutions" prescription form—and then not until September 13, 2016—on which day the Plaintiff was only seen by one "Raina Hachet, P.A.-C."—who was the only person who signed-off the Plaintiff's form.

A "P.A.-C" is only a physician's assistant—not a doctor—and the opinion of a physician's assistant is not an acceptable medical source.[5] Moreover, the Plaintiff produced the physician assistant's form almost seven months *after* her PetSmart fall, and only *after* Global Italian Food asked her to "produce a letter of clearance from your doctor" that she could "work in the office Monday to Friday from 9 am to 5 pm," and that she could "be available on weekends in case it is necessary to go out of town."

Significantly, the physician assistant's form is indefinite and conclusory; in its entirety, her note states: "**No work over 4-5 hrs**. Please allow 15-30 min rest breaks every 2 hrs. for neck + knee pain until September 23, 2016 at next appointment w/us thank you" (SD 198-201; Ex. 26).

> A reasonable accommodation is one 'which presently, or in the near future, enables the employee to perform the essential functions of his job.' *Hudson v. MCI Telecomms. Corp.*, 87 F.3d 1167, 1169 (10th Cir. 1996); 29 C.F.R. § 1630.2(o)(1)(ii). It is part of the employee's burden of production to identify a reasonable accommodation. *Willis v. Conopco, Inc.*, 108 F.3d 282, 283 (11th Cir. 1997) (per curiam).

*Cline v. Home Quality Mgmt.*, No. 01-9016-CIV-MOORE, 2004 U.S. Dist. LEXIS 5475, at *11-12 (S.D. Fla. Mar. 18, 2004).[6]

---

[5] *See, e.g., Williams v. Comm'r of Soc. Sec.*, No. 6:12-cv-134-Orl-0DAB, 2013 U.S. Dist. LEXIS 171601, at *9 (M.D. Fla. Dec. 5, 2013)("The form is signed by Wayne Gardner, PA-C, and not by Dr. Masson. Thus, the opinion is that of Mr. Gardner, a physician's assistant. A physician's assistant's opinion is not 'an acceptable medical source' and 'cannot establish the existence of an impairment.'"); *Smith v. Astrue*, No. 5:08-cv-386-Oc-GRJ, 2010 U.S. Dist. LEXIS 38439, at *17-18 (M.D. Fla. Mar. 24, 2010)(same).

[6] "Significantly, these provisions [42 U.S.C. § 12111(8); 45 C.F.R. § 1232.3(i)] contain no reference to a person's *future* ability to perform the essential functions of his position. **To the contrary, they are formulated entirely in the present tense, framing the precise issue as to**

*Iliyana Stefanova v. Global Italian Food, LLC*, et al.
CASE NO: 17-cv-23975-FAM

The Plaintiff testified that here restaurant evaluations would "take blocks of time. One to do lunch; one to do dinner" (SD 143). "The restaurants they open 11:00, 12:00. Lunch ends at 5:00. So it would between those hours. The same for dinner. Let's say you go at 5:00 and you stay until the restaurant closed. Average restaurant closed let's say 11:00" (SD 99). Therefore, the Plaintiff's restaurant evaluations required six-hour blocks of time!

Because the essential functions of the Plaintiff's job included office hours from 9:00 a.m. to 5:30 p.m. (SD 49-50), restaurant inspections and evaluations in Texas, Virginia, Washington, North Carolina, and Florida (in 6-hour blocks of time exceeding "4-5 hrs"), marketing, training, accounts payable and receivable, *etc.*, the note from the physician's assistant actually **_negates_** the Plaintiff's contention that she could perform the essential functions of her job.

*A fortiori* the Plaintiff's requested "accommodation of working from home," or "working 4-5 hours at the office," were and remain *prima facie* unreasonable, and, therefore, she is not a "qualified individual" as a matter of federal and Florida law. *Id*.

"To survive summary judgment, a plaintiff must show there is a genuine issue as to whether she either 'can perform the essential functions of her job without reasonable accommodation, or failing that,... can perform the essential functions of her job with a reasonable accommodation.'" *Everett*, 703 F. App'x at 942-43 (brackets deleted). The Plaintiff cannot show this based upon the evidence of record in this case—especially her own deposition testimony.

### C. *The Plaintiff Cannot Establish a FMLA Case Against Fratelli or Piola*

Assuming *arguendo* that the Defendants had in fact employed 50 or more employees for each working day during each of 20 or more calendar workweeks in 2015 and 2016, because

---

whether an individual 'can' (not 'will be able to"' perform the job with reasonable accommodations." *Billups v. Emerald Coast Utils. Auth.*, No. 17-10391, 2017 U.S. App. LEXIS 21199, at *11 (11th Cir. Oct. 26, 2017) (per curiam) **(emphasis added)**.

*Iliyana Stefanova v. Global Italian Food, LLC, et al.*
CASE NO: 17-cv-23975-FAM

Global Italian Food was the primary employer of the Plaintiff, Fratelli Management and Piola Americana are entitled to summary judgment as a matter of law. This is so because:

> While a secondary employer is still an employer of the employee, it does not have the same FMLA obligations as the primary employer. *Salgado v. CDW Computer Centers, Inc.*, 1998 U.S. Dist. LEXIS 1374, 1998 WL 60779 at *3 (N.D. Ill. Feb. 5, 1998). Section 825.106 addresses the distinction between primary and secondary employers in the context of a joint employer relationship, as follows:
>
>> **In joint employment relationships, only the primary employer is responsible for giving required notices to its employees, providing FMLA leave, and maintenance of health benefits**. Factors considered in determining which is the "primary" employer include authority/responsibility to hire and fire, assign/place the employee, make payroll, and provide employment benefits. For employees of temporary help or leasing agencies, for example, the placement agency most commonly would be the primary employer.
>
> 29 C.F.R. § 825.106(c); *see also Moreau v. Air France*, 356 F.3d 942, 946 (9th Cir. 2004) ("The regulations distinguish between the 'primary employer' and the 'secondary employer';" citing 29 C.F.R. § 825.106(c)).

*Mahoney v. Nokia, Inc.*, 444 F. Supp. 2d 1246, 1254 (M.D. Fla. 2006)(emphasis added).

The Plaintiff testified that she was employed by Italian Food Culture, Inc. to be an assistant to Stefano Carniato in 2006, and that her employment was transferred to Global Italian Food in 2010 (SD 11-18; Ex. 1). The Plaintiff testified that one of her "job responsibilities was to ensure on behalf of Global Italian Food, LLC that the franchisees complied with the franchisor's standards and quality control and trade dress and trade name" (SD 165). Her email signature represented that she was with "Global Italian Food, LLC"—solely (SD 85, 181; Exs. 3, 23).

In November 2014, the Plaintiff became an Evaluator for Global Italian Food, making $69,000 per annum (SD 64-65, 133). The Plaintiff was solely on Global Italian Food's payroll in 2014, 2015 and 2016 (SD 54). The Plaintiff received W-2s solely from Global Italian Food or, previously, from Italian Food Culture, Inc. (SD 19-20). The Plaintiff has never received a W-2 or

*Iliyana Stefanova v. Global Italian Food, LLC, et al.*
CASE NO: 17-cv-23975-FAM

1099 from either Fratelli Management or from Piola Americana (SD 21).

Global Italian Food alone hired, employed, remunerated, and terminated the Plaintiff in September 2016 (SD 195-96, 201-02). Accordingly, Global Italian Food alone was the Plaintiff's "primary employer," and, had FMLA subject-matter jurisdiction existed, Global Italian Food alone would have been responsible for giving the Plaintiff FMLA notices and leave. *Mahoney*.

### D. *The Defendants Have Established Their Defense of Undue Hardship*

Assuming *arguendo* that the Plaintiff could met her burden of proving that "working from home" or "working 4-5 hours at the office" were reasonable, the record evidence shows that doing so would have created an undue hardship on her employer, i.e., the Piola franchisor, Global Italian Food. As the Eleventh Circuit recently held:

> The plaintiff bears the burden both to identify an accommodation and show that it is reasonable…. Once the plaintiff has met her burden of proving that reasonable accommodations exist, the defendant-employer may present evidence that the plaintiff's requested accommodation imposes an undue hardship on the employer. Id. at 286 (explaining that undue hardship is an affirmative defense, but that evidence of whether an accommodation is reasonable will often also bear on whether the accommodation poses an undue burden on the employer).

*Rabb v. Sch. Bd. of Orange Cty.*, 590 F. App'x 849, 850-51 (11th Cir. 2014)(per curiam)(citations deleted).

Stefano Carniato testified that the Plaintiff could not work from her home because her job duty was in the office and in the field, and that he reminded her of that several times, as follows:

> A. I told her always, she asked several times to work from home and then always I say you cannot work from home because your duty is more than home. She asked me several times to work from home. She can work from home and I say no, you cannot work from home.
> Q. Where did you need her to work, did you want her to come back to the office?
> A. Of course in the office or in the field because she need to go to the store. She need to go here, there. She needed to do several things (CD 74).

13

*Iliyana Stefanova v. Global Italian Food, LLC, et al.*
CASE NO: 17-cv-23975-FAM

Stefano Carniato testified that, because the Plaintiff was not doing her job, he needed to do her job by himself (CD 70-72). He testified that he was missing calls and emails (including from a prospective franchisee in Houston); that he "needed to find a solution because to work like that is really difficult for me"; that he had been looking but could not find somebody to do the Plaintiff's job; and that "even if she was a difficult person to deal, she was a person after more than ten years to change employees for me is a big issue. It is a cost. It is a training, it is not the same" (CD 70-72). As a result, Stefano Carniato and the franchises were in "limbo":

> A. In limbo for me was really uncomfortable. For me, not just for me, also for the store, for the operator, they don't understand. Okay. Iliyana she is sick, okay. I call Stefano for one week, one month, two months, three months. After three months somebody come because Stefano is not always available, I don't answer the email right away and I don't answer the phone right away (CD 71-72).[7]

The Plaintiff's job could not be performed remotely, or from her home, or part-time, or in increments of no more than five hours during workdays, or with 15 to 30-minute breaks every two hours. The Plaintiff's requested accommodations of "working from home" or "working 4-5 hours at the office" imposed an undue burden and hardship on Global Italian Food (Carniato Aff. ¶¶

---

[7] Except for the fact that the EEOC example is at a sales clerk operational level, and that Global Italian Food did not have a second manager to cover for the Plaintiff, this case is quite analogous to an example of "undue hardship" provided in the EEOC's *Enforcement Guidance: Reasonable Accommodation and Undue Hardship under the Americans with Disabilities Act*: [www.eeoc.gov/policy/docs/accommodation.html#undue], as follows:

> Example B: A convenience store clerk with multiple sclerosis requests that he be allowed to go from working full-time to part- time as a reasonable accommodation because of his disability. The store assigns two clerks per shift, and if the first clerk's hours are reduced, the second clerk's workload will increase significantly beyond his ability to handle his responsibilities. The store determines that such an arrangement will result in inadequate coverage to serve customers in a timely manner, keep the shelves stocked, and maintain store security. Thus, the employer can show undue hardship based on the significant disruption to its operations and, therefore, can refuse to reduce the employee's hours. The employer, however, should explore whether any other reasonable accommodation will assist the store clerk without causing undue hardship.

*Iliyana Stefanova v. Global Italian Food, LLC, et al.*
CASE NO: 17-cv-23975-FAM

31, 32). Accordingly, the Defendants are entitled to summary judgment as a matter of law on their Seventh Defense of undue hardship.

## V.  CONCLUSION

"As the Eleventh Circuit has bluntly put, an 'employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.' *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984). The record evidence does not bear any discriminatory reason for Guasch's termination." *Guasch v. Carnival Corp.*, No. 15-23454-Civ, 2017 U.S. Dist. LEXIS 3564, at *8 (S.D. Fla. Jan. 9, 2017).

Likewise, in the instant case, the record evidence does not bear any discriminatory reason for the Plaintiff's termination. Quite to the contrary, the record evidence demonstrates that the Plaintiff was terminated for failing or refusing to perform the essential functions of her job—all the while attempting to engineer a new position working at her (new) home—after seven months and repeated opportunities to do the right thing. Simply put, the Plaintiff took advantage of all of the accommodations and courtesies extended to her by Stefano Carniato for over a decade, then commenced and prosecuted this meritless action to further enrich herself at Defendants' expense.

WHEREFORE, the Defendants respectfully move this Court to enter summary judgment against the Plaintiff, to dismiss this action with prejudice, and to award them attorney's fees.

s/John H. Patterson Jr.
John H. Patterson Jr.
Florida Bar No. 0516597
pat@pattersonsweeny.com
Patterson & Sweeny, PL
Counsel for Defendants
Biscayne Bank Building, Suite 1100
2601 South Bayshore Drive
Miami, Florida 33133
305.350.9000 Telephone

*Iliyana Stefanova v. Global Italian Food, LLC*, *et al*.
CASE NO: 17-cv-23975-FAM

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing, Defendants' Motion for Summary Judgement, was served by electronic filing using CM/ECF on April 9, 2018 on all counsel or parties of record on the Service List below.

s/John H. Patterson Jr.
John H. Patterson Jr.

**SERVICE LIST**
*Iliyana Stefanova v. Global Italian Food, LLC*, *et al*.
**CASE NO: 17-cv-23975-FAM**
**United States District Court – Southern District of Florida**

Jacob K. Auerbach, Esq.
jauerbach@gallup-law.com
Gallup Auerbach
4000 Hollywood Boulevard
Suite 265 South
Hollywood, Florida 33021
Telephone 954.894-3035
Attorney for Plaintiff
Served via Notice of Electronic Filing

[PAT\1601-001\MFSJ]